NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 07-795

STATE IN THE INTEREST OF S.R.W. & F.M.W.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. J-2005-081
HONORABLEPATRICIA C. COLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

REVERSED AND RENDERED.

Nicholas Pizzolatto Jr.
Attorney at Law
P. O. Box 1487
Lake Charles, LA 70602
(337) 491-2963
Counsel for Appellant:
State of Louisiana, Office of Community Services

Kenneth Ray Rush
Attorney at Law
P. O. Box 704
Oakdale, LA 71463
(318) 335-2759
Counsel for Appellee:
A. M.

**Errol David Deshotels  Jr.**
**Attorney at Law**
**P. O. Box 399**
**Oberlin, LA 70655**
**(337) 639-4309**
**Counsel for Appellees:**
**S. W.**
**F. W.**

**PICKETT, Judge.**

The appellant, the State of Louisiana, appeals the judgment of the trial court denying their Petition for Termination of the Parental Rights of A.M.

## STATEMENT OF THE CASE

On July 27, 2005, the Allen Parish Office of Community Services (OCS) received a report of neglect regarding S.W., born November 21, 1996, and F.W., born December 30, 1998. The report suggested that S.W. was sexually acting out and that their caretaker was using charms and exorcisms on the girls in an effort to cure physical and psychological problems of both girls. These sisters were in the custody of their maternal grandmother, M.M., pursuant to a New Jersey court order. The New Jersey court had issued a consent order on January 5, 2000, granting custody to M.M. and her former husband G.M. because the children's mother, A.M., and father, M.W., were incarcerated.

According to information provided to OCS from the New Jersey State Parole Board, A.M. had been arrested on October 12, 1999, on charges of Aggravated Assault and Endangering the Welfare of a Child. She pled guilty to Endangering the Welfare of a Child on December 4, 2000, and was sentenced to four years in prison on January 19, 2001. These charges were the result of injuries sustained by F.W. while in the custody of A.M. As a result of these injuries, F.W. has been diagnosed with Shaken Baby Syndrome, with spastic quadriplegic cerebral palsy, mental retardation, and a history of subdural shunt.

OCS investigated the complaints against M.M., and on August 16, 2005, M.M. contacted OCS to relinquish custody of the girls. The trial court issued an Instanter Order the same day, and OCS took custody of the girls. The children were

1

adjudicated children in need of care on January 5, 2006. Both S.W. and F.W. have been in state custody since August 16, 2005.

OCS attempted to contact A.M. and M.W. to inform them that their children were in state custody and to devise a case plan for reunification. In September 2005, A.M. contacted Anita Artis, the OCS caseworker assigned to this case. She explained that she had been released on March 7, 2003, and that she was on parole until March 7, 2006. A.M. explained that she was not ready to work on a case plan because two of the conditions of her parole were that she could not leave the state of New Jersey and she could not have unsupervised contact with children under the age of twelve. Ms. Artis discussed the case plan that OCS had prepared for her, and urged her to contact OCS when she completed parole. The case plan dated September 14, 2005, included the following: (1) notify OCS upon release from parole, (2) obtain and maintain employment/income, (3) procure a safe, clean, stable domicile with enough room for A.M. and both children, (4) set up and maintain a visitation schedule, (5) notify OCS of any change in status, and (6) provide a list of relatives for possible placement. This case plan, however, was not approved by the trial court until January 5, 2006.

On March 3, 2006, the trial court approved a case plan dated February 24, 2006, with the goal of reunification. This case plan omitted the requirements of the first case plan, and required little affirmative action on the part of A.M. It stated only that she was to contact OCS to begin work on a case plan upon her release from parole, and that OCS would find a case worker in New Jersey to devise a case plan and monitor her progress. On March 31, 2006, A.M. contacted OCS and explained that she was ready to work a case plan. Ms. Artis sent a copy of the case plan to A.M.

2

Ms. Artis also tried to contact the New Jersey Division of Youth and Family Services (DYFS) to have them assign a case worker for A.M. in New Jersey. A.M. testified that she also sought help from DYFS, even visiting the offices in Camden, New Jersey and Trenton, New Jersey, to find out why a case worker had not been assigned. In August 2006, DYFS ultimately declined to assign a case worker because there was not an open file on A.M. in New Jersey. A.M.'s welfare case manager, Terri Fox, agreed to monitor A.M.'s OCS case plan compliance. The case plan at that time was the same as in March 2006. In fact, the trial court approved the same case plan, dated February 24, 2006, at a July 17, 2006, hearing.

On August 25, 2006, OCS created a new case plan for the family. The goal of this case plan continued to be reunification of the family. However, in her letter to the trial court dated December 20, 2006, Ms. Artis states that the OCS met on August 21, 2006, and changed the permanent goal from reunification to adoption. This case plan required the following from A.M.: (1) acknowledgment of the impact of neglect in the family, (2) maintain income to support the family for six consecutive months, (3) maintain safe housing adequate for the entire family for six consecutive months, (4) set up and maintain a visitation schedule with her children, and (5) inform OCS of any change in circumstance. OCS was required to assess A.M.'s history of substance abuse, mental health, parental abilities, ability to care for a child with special needs, and ability to maintain housing and income. The trial court did not approve this case plan until a hearing held on January 4, 2007, though in its order the court stated that the permanent goal was adoption rather than reunification. Ms. Artis, in her letter to the court, also notified the court for the first time that A.M. was in treatment for substance abuse and had tested positive for illicit drugs as recently as November

3

2006. Nevertheless, the case plan approved by the court makes no mention of the substance abuse of A.M.

On February 19, 2007, the state filed a Petition for Termination of Parental Rights and Certification for Adoption, alleging abandonment pursuant to La.Ch.Code art. 1015(4) and that the children had been in the custody of the state at least one year and the parent failed to follow a case plan pursuant to La.Ch.Code art. 1015(5). The petition named both A.M. and M.W. as defendants. A trial was held on May 8, 2007. Following the trial, the trial court took the matter under advisement.

On May 11, 2007, the trial court issued a written opinion and judgment. The trial court found service was not properly made on M.W., and thus the termination petition was continued as to him. As to A.M., the trial court found that the state had not proven by clear and convincing evidence that A.M. had abandoned her children under La.Ch.Code art. 1015(4). While the trial court found that "it does not appear to be in the best interest of the children that the parental rights of the mother **not** be terminated," she found that the state had not met its burden of proving that A.M. had not substantially complied with the case plan. Thus, the termination petition against A.M. was dismissed. The state now appeals that judgment.

### ASSIGNMENTS OF ERROR

The state asserts three assignments of error:

1. The trial court committed manifest error by finding that the appellant had not proven that abandonment pursuant to Children's Code Article 1015(4) applied in this case for the termination of appellee's parental rights by clear and convincing evidence.

2. The trial court committed manifest error by finding that the appellant had not proven that the mother's parental rights should be terminated based upon Children's Code Article 1015(5).

4

3.	The trial court committed manifest error by not terminating appellee's parental rights after finding that it was not in the best interest of the minor children to NOT terminate appellee's rights without giving or setting forth any exceptional reason or reasons why it was not in the children's best interest to terminate appellee's parental rights.

## DISCUSSION

In *State ex rel A.T.*, 06-501, p. 4-5 (La. 7/6/06), 936 So.2d 79, 82, the supreme court stated:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.
>
> . . . .
>
> In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

Furthermore, a trial court's findings of fact in a termination of parental rights case will not be reversed on appeal unless they are clearly wrong or manifestly erroneous. *State ex rel. A.T.*, 936 So.2d 79.

We will address the appellant's third assignment of error first. The supreme court has made it clear that the trial court must find both a statutory ground for termination of parental rights and the termination is in the best interest of the child in order to terminate parental rights. A finding that termination is in the best interest of the child, as the court ruled in this case, is not dispositive of the issue of

5

termination. The state still must prove a statutory ground by clear and convincing evidence to justify termination. Thus, we find the state's third assignment of error lacks merit.

Nevertheless, we note that we find no manifest error in the trial court's finding that the termination of A.M.'s parental rights are in the best interest of S.W. and F.W. The evidence introduced at trial shows that while in foster care, S.W. has stopped sexually acting out, her lying has decreased, and her grades have improved. Overall, her situation is now less stressful, which has improved her behavior, according to Ms. Ann Landry, a counselor who has treated S.W. While the record suggests that she may wish to be reunited with her mother, Ms. Landry explained that S.W. has an idealized view of A.M. It is also clear from the record that A.M. is not capable at this time of providing the stability necessary in her children's life, which would increase S.W.'s stress and possibly cause regression of her behavior. Finally, she is in a foster care placement which could become permanent if she is freed for adoption. As for F.W., she is a special needs child who does not recognize her mother. Her special care needs have been met in foster care. A.M. has not shown that she is interested in or capable of caring for F.W. Furthermore, this court cannot overlook the fact that the record before us shows that A.M. was convicted of a felony which resulted in F.W.'s gravely disabling physical or psychological injury.[1]

In its first assignment of error, the state argues the trial court erred in not finding that it proved that A.M. abandoned her children pursuant to La.Ch.Code art. 1015(D), which states:

---

[1]We note that the state did not include in the petition for termination facts which would support termination under La.Ch.Code art. 1015(2)(i), and this issue was not litigated in the trial court, thus we cannot consider termination under this section. *See* La.Ch.Code art. 1019(C).

6

The grounds for termination of parental rights are:

. . . .

(4)    Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

> (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

The children came into the custody of the state on August 16, 2005. Ms. Artis sent a letter notifying A.M. in August 2005. A.M. contacted Ms. Artis in September 2005, when she explained that she could not work a case plan because of her parole restrictions. Even though she could not leave New Jersey and could not have unsupervised contact with children under the age of twelve, she made no effort to keep in contact with her daughters, either by phone or mail. She had no contact with anyone at OCS until March 31, 2007, twenty-three days after she was released from parole. Even assuming Ms. Artis did not contact A.M. until the end of September, this is a period of greater than six months in which A.M failed to have any contact with her children, and as long as seven months since she found out they were in the custody of the state. We find the trial court erred in finding that the state did not prove by clear and convincing evidence that A.M. abandoned S.W. and F.W. While A.M. could not visit her children because of her parole restrictions, the evidence is

7

clear that she had no contact with them in any way, and nothing prevented her from sending letters or arranging phone calls with the girls through OCS.

As we find the state has proved a statutory ground for termination of parental rights, and the termination is in the best interest of S.W. and F.W., we therefore terminate A.M.'s parental rights. Because we find merit in the state's first assignment of error, we do not need to address the state's second assignment of error.

## CONCLUSION

The judgment of the trial court is reversed and the parental rights of A.M. are hereby terminated.

**REVERSED AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.